# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DO NO HARM, a nonprofit corporation incorporated in the State of Virginia,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM LEE, in his official capacity as Governor of the State of Tennessee,<br><br>Defendant. | No. _____<br><br>**COMPLAINT** |

## INTRODUCTION

1. As the Volunteer State, Tennessee has a strong tradition of citizens offering their unique talents to serve in the military or government. While citizens may serve on a wide array of boards and commissions, an individual's candidacy often depends on factors outside his or her control, like age or race. Sadly, for more than thirty-five years, Tennessee governors have been required to consider an individual's race when making appointments to the state's boards, commissions, and committees.

2. The Board of Chiropractic Examiners (Chiropractic Board) and the Board of Medical Examiners (Medical Board) are two such boards.

3. The Chiropractic Board regulates, licenses, and investigates chiropractors to ensure they meet the high standards of the profession. Service on the Chiropractic Board requires that an individual be a licensed chiropractor for at least five years, a certified chiropractic x-ray technician for at least two years, or a certified chiropractic therapy assistant for at least two years. There is also a seat on the Board reserved for a consumer.

4. The Medical Board similarly regulates, licenses, and investigates non-osteopathic physicians, naturopaths, genetic counselors, and acupuncturists. Service on the Medical Board

requires that an individual be either a licensed physician with at least six years of experience practicing medicine or surgery, or a nonphysician citizen of Tennessee who is a consumer of healthcare and who has no ownership interest or other financial interest in any healthcare facility, business, or school.

5. But in addition to these requirements, Tennessee law requires the Governor to prefer some potential board members over others solely on account of their race when making appointments to the Boards.

6. Such blatant racial discrimination against individuals who could sit on Tennessee's Chiropractic Board or Medical Board serves no legitimate government purpose. It is demeaning, patronizing, un-American, and unconstitutional.

7. Plaintiff Do No Harm is an organization of over 6,000 medical professionals, students, and policymakers dedicated to eliminating racial discrimination in healthcare. It has members who are qualified, ready, willing, and able to be appointed to the Chiropractic Board and Medical Board. It brings this lawsuit to vindicate its members' constitutional rights, to ensure that every qualified individual has the equal right to serve on the Boards, and to ensure that Tennesseans are regulated by boards that are not selected on the basis of race.

## JURISDICTION AND VENUE

8. This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question), and § 1343(a)(3) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), because Defendant resides in this district, and 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred and continue to occur in this district.

## PARTIES

10. Plaintiff Do No Harm is a national nonprofit corporation headquartered in Glen Allen, Virginia. It is a membership organization of over 6,000 medical professionals, students, and policymakers. Its mission is to protect healthcare from a radical, divisive, and discriminatory ideology. Do No Harm's membership includes at least one individual who has been a licensed chiropractor for at least five years in Tennessee, at least one individual who has been a licensed physician for at least six years in Tennessee, and one or more individuals who meet the requirements to be consumer members of the Medical Board.

11. Specifically, Do No Harm Member "A" is a licensed chiropractor in Tennessee. He is not a member of a racial minority. Member A resides in Tennessee and has practiced chiropractic for 15 years. Member A is actively engaged in chiropractic practice and does not practice any other branch of the healing arts. Member A is qualified, ready, willing, and able to be appointed to the Chiropractic Board.

12. Do No Harm Member "B" is a nonphysician citizen of Tennessee. Member B is not a member of a racial minority. Member B is a consumer of healthcare, and he has no ownership interest or other interest in any healthcare facility, business, or educational program that would disqualify him from serving on the Medical Board. Member B is not employed by or a member of the governing body of, nor has a financial interest in, any medical school, college, or university of the state or of any school, college, or university in which allied health care practitioners who are

regulated by the Medical Board receive their qualifying education. Member B is ready, willing, and able to be appointed to the Medical Board.

13. Do No Harm Member "C" is a nonphysician citizen of Tennessee. Member C is not a member of a racial minority. Member C is a consumer of healthcare, and he has no ownership interest or other interest in any healthcare facility, business, or educational program that would disqualify him from serving on the Medical Board. Member C is not employed by or a member of the governing body of, nor has a financial interest in, any medical school, college, or university of the state or of any school, college, or university in which allied health care practitioners who are regulated by the Medical Board receive their qualifying education. Member C is ready, willing, and able to be appointed to the Medical Board.

14. Defendant William Lee is the Governor of the State of Tennessee. Governor Lee is required by Tennessee law to make all appointments to the Boards. Tenn. Code §§ 8-1-111, 63-4-102(c) (Chiropractic Board), and 63-6-102(c) (Medical Board) require Governor Lee to consider race when making appointments to the Boards. Governor Lee is sued in his official capacity.

## FACTUAL ALLEGATIONS

**History of Racial Mandate for Tennessee Boards**

15. In 1988, the Tennessee Legislature considered a bill endorsed by the American Association of Retired Persons that directed the Governor to appoint at least one person sixty or older to more than seventy different boards.

16. At the time, legislators raised concerns on whether this proposed provision was "legal" and "constitutional."

17. During the April 13, 1988, Senate hearing, state senators debated an amendment to the bill that would tack on a racial mandate to all the delineated boards.

18. Throughout the legislative discussions, there was no mention of the governmental interest behind imposing a race-based classification for more than seventy Tennessee boards.

19. The legislative record contains no discussion of racial discrimination, statistics, or any other alleged governmental interest that formed the basis for the ultimate bill that imposed a racial mandate for appointments to more than seventy Tennessee boards.

20. In addition to the specifically delineated quotas for individual boards, the bill also contained a catch-all provision which directed the Governor to "strive to ensure that at least one (1) such citizen serving on each such board, commission, committee, or other governing or advisory entity is . . . a member of a racial minority." Tenn. Code § 8-1-111. This catch-all provision is applicable to appointments made to all "boards, commissions, committees, and other governing or advisory entities of the executive branch of state government." *Id.*

**The Chiropractic Board**

21. The Chiropractic Board was created in 1923 to regulate the practice of chiropractic in Tennessee.

22. To protect the health, safety, and welfare of Tennesseans, the Chiropractic Board interprets the laws, rules, and regulations governing the practice of chiropractic in Tennessee. The Chiropractic Board licenses qualified chiropractors, promulgates regulations, investigates allegations of misconduct, and disciplines chiropractors that violate its rules or regulations.

23. The Chiropractic Board is comprised of seven members appointed by the Governor. Five of those members must be licensed Tennessee chiropractors who have been actively engaged in Chiropractic practice in Tennessee for at least five years. Tenn. Code § 63-4-103(a).

24. When making appointments to the Chiropractic Board, the Governor must "strive to ensure . . . that at least one (1) person serving on the board is a member of a racial minority." Tenn. Code § 63-4-102(c).

**Current and Future Vacancies on the Chiropractic Board**

25. There is currently one opening on the Chiropractic Board for a licensed chiropractor. That seat became available on May 1, 2024, and currently has a holdover until a successor is appointed by the Governor and qualifies. The Chiropractic Board's other six members are all Caucasian. Thus, the Governor must consider a potential board member's race as a factor in making his appointment decision. Specifically, when considering who to appoint to the Chiropractic Board that is currently composed only of Caucasian members, the Governor must give preference to candidates who are a racial minority.

26. In addition to the current vacancy, the Chiropractic Board is scheduled to have vacancies open for licensed chiropractors on May 1 of 2025, 2026, 2027, and 2028.

27. Openings can also occur unpredictably in the event of a resignation, removal, or death of a Board member.

28. The Governor makes appointments to the Board at unpredictable times.

29. Do No Harm Member A is qualified, willing, and able to be appointed to the Chiropractic Board for the current chiropractor vacancy—as well as future openings—but is disfavored for appointment on account of his race.

30. So long as the race-based mandate remains in place, Do No Harm Member A will not receive equal consideration for openings on the Chiropractic Board.

**The Medical Board**

31. The Medical Board was created in 1901 to regulate the practice of medicine in Tennessee.

32. To protect the health, safety, and welfare of Tennesseans, the Medical Board interprets the laws, rules, and regulations governing the practice of medicine and surgery in Tennessee. The Medical Board licenses qualified non-osteopath physicians, naturopaths, genetic counselors, and acupuncturists. The Medical Board also promulgates regulations, investigates allegations of misconduct, and disciplines licensees that violate its rules or regulations.

33. The Medical Board is comprised of twelve members appointed by the Governor. Nine of those members must be licensed Tennessee physicians who have been actively engaged in the practice of medicine and/or surgery for at least six years, and who graduated from a medical school "whose curriculum is substantially similar to, and whose educational standards are as high as that of, the medical department of the University of Tennessee, as published at the time of its extant catalogue." Tenn. Code § 63-6-101(a)(1).

34. The remaining three members of the Medical Board must be "nonphysicians who are consumers of health care and who neither own nor have any financial or other interest in any health care facility or business or school of medicine or other allied health care practitioner educational program and who shall represent the public at large." Tenn. Code § 63-6-101(a)(2).

35. Medical Board members cannot be "employed by or be a member of the governing body of, or have a financial interest in, any medical school, college or university of the state or of any school, college or university in which allied health care practitioners who are under the regulation of the board receive their qualifying education." Tenn. Code § 63-6-101(a)(3).

36. When making appointments to the Medical Board, the Governor "shall, to the extent feasible, strive to ensure the full twelve-member board is composed of at least . . . one (1) person who is an African-American." Tenn. Code § 63-6-102(c).

**Current and Future Vacancies on the Medical Board**

37. There are currently at least two, and as many as four, openings on the Medical Board for licensed physicians. Two of the open seats became available on May 1, 2024, and currently have holdovers until successors are appointed by the Governor and qualify. Two other seats may be vacant due to resignations. All current members of the Medical Board are Caucasian. Thus, the Governor must consider a potential board member's race as a factor in making his appointment decisions. Specifically, when considering who to appoint to the Medical Board that is currently composed only of Caucasian members, the Governor must give preference to candidates who are African-American.

38. In addition to these current vacancies, the Medical Board is scheduled to have vacancies for physician members in 2025, 2026, and 2027.

39. The Medical Board is also scheduled to have vacancies for consumer members open on May 2 and July 1 of 2026, and July 1 of 2027.

40. Openings can also occur unpredictably in the event of a resignation, removal, or death of a Board member.

41. The Governor makes appointments to the Board at unpredictable times.

42. Do No Harm Member B is qualified, willing, and able to be appointed to the Medical Board for a future consumer vacancy, but he is disfavored for appointment on account of his race.

43. Do No Harm Member C is qualified, willing, and able to be appointed to the Medical Board for a future consumer vacancy, but he is disfavored for appointment on account of his race.

44. So long as the race-based quota remains in place, Do No Harm Members B and C will not receive equal consideration for openings on the Medical Board.

## CLAIMS FOR RELIEF

### First Cause of Action

### Tenn. Code § 63-4-102(c) Violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

45. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 44.

46. An actual and substantial controversy exists between Plaintiff, its members, and Defendant. Plaintiff's members have the right to seek appointment to the Chiropractic Board free from consideration of their race.

47. Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

48. Tenn. Code § 63-4-102(c) requires the Governor to consider and make decisions on the basis of the race of potential board members when making appointments to the Chiropractic Board.

49. Governmental classifications on the basis of race violate the Equal Protection Clause unless they are narrowly tailored to a compelling governmental interest.

50. The racial mandate in section 63-4-102(c) does not serve a compelling government interest.

51. The racial mandate in section 63-4-102(c) does not remediate any specific instances of racial discrimination that violated the Constitution or statutes.

52. Even if the racial mandate in section 63-4-102(c) served a compelling government interest, it is not narrowly tailored to remediate past, intentional discrimination.

53. The racial mandate in section 63-4-102(c) stereotypes individuals on the basis of race, treats all individuals of different races as fungible, mandates racial preferences, has no "good faith exception," and has no end date.

54. Plaintiff has no adequate remedy at law to compensate for the loss of its members' equal protection rights and will suffer irreparable injury absent an injunction prohibiting Defendant's enforcement of section 63-4-102(c).

55. Plaintiff is therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of section 63-4-102(c).

## Second Cause of Action

### Tenn. Code § 63-6-102(c) Violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

56. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 44.

57. An actual and substantial controversy exists between Plaintiff, its members, and Defendant. Plaintiff's members have the right to seek appointment to the Medical Board free from consideration of their race.

58. Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

59. Tenn. Code § 63-6-102(c) requires the Governor to consider and make decisions on the basis of the race of potential board members when making appointments to the Medical Board.

60. Governmental classifications on the basis of race violate the Equal Protection Clause unless they are narrowly tailored to a compelling governmental interest.

61. The racial mandate in section 63-6-102(c) does not serve a compelling government interest.

62. The racial mandate in section 63-6-102(c) does not remediate any specific instances of racial discrimination that violated the Constitution or statutes.

63. Even if the racial mandate in section 63-6-102(c) served a compelling government interest, it is not narrowly tailored to remediate past, intentional discrimination.

64. The racial mandate in section 63-6-102(c) stereotypes individuals on the basis of race, treats all individuals of different races as fungible, mandates racial quotas, requires racial balancing, has no "good faith exception," and has no end date.

65. Plaintiff has no adequate remedy at law to compensate for the loss of its members' equal protection rights and will suffer irreparable injury absent an injunction prohibiting Defendant's enforcement of section 63-6-102(c).

66. Plaintiff is therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of section 63-6-102(c).

## Third Cause of Action

### Tenn. Code § 8-1-111 Violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

67. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 44.

68. An actual and substantial controversy exists between Plaintiff, its members, and Defendant. Plaintiff's members have the right to seek appointment to the Chiropractic and Medical Boards free from consideration of their race.

11

Case 3:24-cv-01334   Document 1   Filed 11/07/24   Page 11 of 13 PageID #: 11

69. Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

70. Tenn. Code § 8-1-111 requires the Governor to consider and make decisions on the basis of the race of potential board members when making appointments to Tennessee public boards.

71. Governmental classifications on the basis of race violate the Equal Protection Clause unless they are narrowly tailored to a compelling governmental interest.

72. The racial mandate in section 8-1-111 does not serve a compelling government interest.

73. The racial mandate in section 8-1-111 does not remediate any specific instances of racial discrimination that violated the Constitution or statutes.

74. Even if the racial mandate in section 8-1-111 served a compelling government interest, it is not narrowly tailored to remediate past, intentional discrimination.

75. The racial mandate in section 8-1-111 stereotypes individuals on the basis of race, treats all individuals of different races as fungible, mandates racial preferences, requires racial balancing, has no "good faith exception," and has no end date.

76. Plaintiff has no adequate remedy at law to compensate for the loss of its members' equal protection rights and will suffer irreparable injury absent an injunction prohibiting Defendant's enforcement of section 8-1-111.

77. Plaintiff is therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of section 8-1-111.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief.

1. A declaration that the racial mandates in Tenn. Code §§ 8-1-111, 63-4-102(c), and 63-6-102(c) violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

2. A permanent prohibitory injunction forbidding Defendant and Defendant's agents from enforcing, or attempting to enforce, the racial mandates in Tenn. Code §§ 8-1-111, 63-4-102(c), and 63-6-102(c);

3. An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

4. Such other relief as the Court deems just, necessary, or proper.

DATED: November 7, 2024.

Respectfully submitted,

| | |
|---|---|
| Caleb R. Trotter, Cal. Bar No. 305195* | /s/ Daniel J. Turklay |
| PACIFIC LEGAL FOUNDATION | Daniel J. Turklay (#034600) |
| 555 Capitol Mall, Suite 1290 | TURKLAY LAW |
| Sacramento, CA 95814 | 115 E Main Street Suite F |
| Telephone: (916) 419-7111 | Lebanon, TN 37087 |
| CTrotter@pacificlegal.org | Telephone: (615) 838-5903 |
| | Fax: (888) 868-0014 |
| David J. Hoffa, Ariz. Bar No. 038052* | daniel@turklaylaw.com |
| PACIFIC LEGAL FOUNDATION | |
| 3241 E. Shea Blvd., Suite 108 | |
| Phoenix, AZ 85028 | |
| Telephone: (916) 419-7111 | *Pro Hac Vice Applications Forthcoming* |
| DHoffa@pacificlegal.org | |

*Attorneys for Plaintiff*